VOLUNTARY LABOR ARBITRATION
STATE OF NEW YORK

---

In the Matter of the Arbitration between

Police Officer Linda DiMeglio,
                    Employee-Claimant,                    **OPINION**

                                                          **AND**

            -and-
                                                          **AWARD**

Village of Briarcliff Manor,
                    Employer-Respondent,

Re: General Municipal Law Section 207-c status

---

BEFORE:          Jay M. Siegel, Esq.
                 Arbitrator

APPEARANCES:

For the Claimant:    New York State Union of Police Associations, Inc.
                     By: Marilyn D. Berson, Esq.

For the Respondent:  Lamb & Barnosky, LLP
                     By: Richard K. Zuckerman, Esq. & Lindsay T. Crocker, Esq.


    In accordance with the June 1, 2002-May 31, 2005 collective bargaining

agreement (Joint Exhibit 1) between the Village of Briarcliff Manor (Village) and the

Village of Briarcliff Manor Policemen's Benevolent Association, Inc. (PBA), the

undersigned was duly designated as Arbitrator to hear and decide a dispute between

Police Officer Linda DiMeglio and the Village. A hearing was held on April 25, 2006 in

Briarcliff Manor, New York.

    The parties were accorded a full and fair hearing, including the opportunity to

present evidence, examine and cross-examine witnesses and make arguments in support

1

of their respective positions. The record was closed upon receipt of the parties' briefs on

or about July 13, 2006.

## ISSUE

The parties stipulated that the following issue would be decided by the Arbitrator

in this proceeding:

> Is Police Officer DiMeglio eligible for General Municipal Law Section
> 207-c status due to the injury she suffered on December 28, 2005?

## RELEVANT CONTRACT PROVISIONS

Article 23 of the Agreement (General Municipal Law Section 207-c procedure)

provides in relevant part:

**Section 1.    Applicability**

Section 207-c of the General Municipal Law provides that any Police Officer of the
Police Department of the Village of Briarcliff Manor

> "who is injured in the performance of his duties or who is taken sick as a result of
> the performance of his duties so as to necessitate medical or other lawful or
> remedial treatment shall be paid by the municipality by which he is employed
> the full amount of his regular salary or wages until his disability arising therefrom
> has ceased and, in addition, such municipality shall be liable for all medical
> treatment and hospital care necessitated by reason of such injury or illness."

**Section 3.    Application for Benefits**

1. Any Claimant who is injured in the performance of his/her duties, or is taken sick
   as a result of the performance of his/her duties, shall file a written incident report
   with the Chief and Claims Manager within (30) calendar days of becoming aware
   of the injury or illness. Upon sufficient reason, an application for Section 207-c
   benefits may be entertained in the discretion of the Claims Manager,
   notwithstanding the failure to file the necessary incident report within the required
   thirty (30) calendar days.

**Section 4.    Authority and Duties of Claims Manager**

1.   The Claims Manager shall have the sole and exclusive authority to determine whether a Claimant is entitled to Section 207-c benefits. In making the determination, the Claims Manager shall examine the facts and circumstances giving rise to the application for such benefits. The Claims Manager shall provide his/her determination within thirty (30) calendar days after receiving the application for benefits.

2.   The Claims Manager shall have the authority to:

   (a)   employ experts and specialists to assist in the rendering of the determination of eligibility;

   (b)   require the production of any book, document or other record that pertains to the application, injury, or illness;

   (c)   require the Claimant to submit to one (1) or more medical examinations related to the illness or injury;

   (d)   require the Claimant to sign forms for the release of medical information that bears upon the application;

   (e)   require the attendance of the Claimant and all other witnesses for testimony upon reasonable notice;

   (f)   do all that is necessary and advisable in the processing of said application.

On an initial determination investigation, a Claimant must cooperate with the Village and provide all necessary information, reports and documentation. A determination of initial eligibility shall be made within a reasonable time, base upon the investigation without holding a hearing.

The Claims Manager shall mail a written copy of his/her decision to the Claimant, Village and the Chief within three (3) calendar days of his/her determination. The written determination shall set forth the reasons for the Claims Manager's decision.

An appeal from an initial determination of the Claims Manager must be made within ten (10) calendar days of receipt of the initial determination pursuant to Section 11 of the procedures herein.

**Section 11.    Hearing Procedure**

1.   Hearings requested under the provisions of this procedure shall be conducted by a neutral Arbitrator related to the issues to be determined. The parties shall attempt to agree on a mutually acceptable Arbitrator. In the event the parties cannot agree, the Arbitrator shall be selected in accordance with Article 19 – Grievances and Arbitration of this Agreement. The Claimant may be represented by a designated representative and may subpoena witnesses. Each party shall be responsible for all fees and expenses incurred in their representation. Either party or the Arbitrator may cause a transcript to be made. The Claimant and the Village agree to share equally the costs of the transcript. After the hearing, the Arbitrator shall render a determination which shall be final and binding upon all parties. Any such decision of the Arbitrator shall be

3

reviewable only pursuant to the provisions of Article 78 of the Civil Practice Law and Rules. The fees and expenses of the Arbitrator shall be borne equally by the parties.

## BACKGROUND FACTS

Police Officer Linda DiMeglio (the Claimant), has been employed by the Village's Police Department since May 2001. On December 28, 2005, she was scheduled to work the 3:00 p.m. to 11:00 p.m. tour of duty. She arrived at the police station at approximately 2:45 p.m. that day. She went to the ladies room and then to the women's locker room to change into her uniform. While she was changing into her work shoes, she lost her balance. To avoid falling, she grabbed on to a large, free-standing bookcase that fell on top of her. The toppling bookcase caused the Claimant to fall forward and down as books and other items on the bookshelf fell on to her and the floor. The Claimant felt pain in her knee, back and leg area and requested assistance from Police Officer Thomas Farrington. Officer Farrington helped the Claimant off the floor and escorted her to the desk area. A paramedic was called to observe the Claimant and recommended that she receive medical attention. The Claimant was subsequently transported to White Plains Hospital.

Officer Farrington completed a police report regarding incident in the locker room involving the Claimant (Joint Exhibit 5). The report states that he was dispatched to assist Officer DiMeglio at 14:47 or 2:47 p.m.

On January 4, 2006, the Claimant applied to the Village for benefits under Section 207-c of the General Municipal Law based upon the injuries she sustained during the incident in the locker room that occurred on December 28, 2005 (Joint Exhibit 2). The Claimant's application states that on December 28, 2005 at 1500 hours she sustained an

injury while changing in to her uniform for a tour of duty. The application also states that

her injuries included "internal derangement of knee, hip and lower back pain." (Joint

Exhibit 2).

Village Manager Michael S. Blau responded to the Claimant's application for

Section 207-c benefits by letter dated January 11, 2006 (Joint Exhibit 2). Mr. Blau's

response in relevant part states:

> Please be advised that I have reviewed your application and have the following
> comments in relation to the information provided on the application form.
>
> The time of the incident, as noted on your application form is 15:00, or 3:00 p.m.
> However, the Police Report noting the call for medical aid time states the time to
> be 14:47. Based thereon, I must presume that the actual time of the accident
> prompting your application is 14:47 or prior to 14:47 and that is the time that I
> must use to evaluate your application.
>
> Your hours of work on the date of the accident were 15:00 to 23:00 (3:00 p.m. to
> 11:00 p.m). The accident for which you are requesting benefits occurred prior to
> your scheduled work hours.
>
> Based upon the information as included in your application and revised as noted
> herein, your application for GML Section 207-c benefits are hereby denied.

The Claimant appealed Mr. Blau's decision by letter dated January 17, 2006

(Joint Exhibit 4). The instant proceeding was convened to resolve that matter.


## POSITION OF THE CLAIMANT

The Claimant initially argues that she is entitled to 207-c benefits because Section

207-c of the General Municipal Law is a remedial statute that must be liberally construed

in favor of coverage for injured officers. She asserts that the standard for the award of

benefits in this case is the statute itself and case law defining the statute's breadth of

coverage. According to the Claimant, it is crystal clear that the award of benefits is based

upon statute because Section 14 (2) of the General Municipal Law procedure in the collective bargaining agreement states:

> It is specifically agreed and understood that any reference related to General Municipal Law Section 207-c benefits is informational only, and is not intended to reduce the benefits or rights contained in the statute or any amendments made thereto. The intent is to read this procedure in conformity with General Municipal Law Section 207-c. (Joint Exhibit 1)

The Claimant stresses that the standard for Section 207-c benefits eligibility, as reiterated repeatedly by the New York State Court of Appeals, is that "...a qualified petitioner need only prove a direct causal relationship between job duties and resulting injury..." White v. County of Cortland, 97 N.Y.2d 336 (2002) According to the Claimant, the Court of Appeals chastised the County of Cortland in White, supra, for imposing a heightened standard of proof by requiring the claimants to demonstrate that their disability was related in a substantial degree to their job duties.

Likewise, in Matter of Theroux v. Reilly, 1 N.Y.3d 232 (2003), the Court of Appeals overruled lower courts' interpretations of its prior holding in Balcarek v. County of Nassau, 94 N.Y.2d 253 (1999). It held that claimants do not have to prove their injury was the result of a "heightened risk", as that standard is not supported either by the unambiguous language of the statute or the legislative history evidencing the remedial nature of the statute.

The Claimant asserts that even if one gives serious consideration to the Village's arguments in this case, the only debate is whether she was engaged in the performance of her duties at the time of her injury. Since there is, at most, ambiguity as to her coverage, any doubt must be resolved in her favor so that the legislative intent of protecting injured

police officers by continuing their pay and benefits for injuries sustained in the performance of their duties is fulfilled.

The Claimant builds on this argument by stressing that, as a matter of law, her injury was incurred in the performance of duty. This is the case because in Theroux, supra, the Court of Appeals stated that "the word 'duties' in Section 207-c encompasses the full range of a covered employee's job duties" (at 383-384). Since Section 207-c covers the full spectrum of police duties from start to finish, the Claimant contends that her Section 207-c coverage began with her arrival at the station on December 28, 2005, even though it was before her scheduled start time of 3:00 p.m.

The Claimant maintains that in this case arrival time must be considered duty time because the Village is well aware that its officers arrive before the strike of the hour that the tour is to begin. She stresses that the Village not only provides locker rooms for officers for uniform changes but that the Village allows officers to relieve fellow officers early. The Village also takes the liberty of calling officers out of the locker room to work without additional compensation before their tours are to begin. The Claimant points out that Officer Newman, Officer Farrington, and herself all testified in detail about this uncontroverted history and practice and that all three officers testified about many specific incidents where, upon their arrival at the station and before the tour was to begin, they were ordered to go out on road calls.

The Claimant argues that arrival time is so necessary to the performance of duties that it must be deemed duty time even if the Village did not call upon officers to answer calls. There is preparatory work that includes changing into uniform, placing personal belongings in a locker, picking up a radio, advising the desk officer what car will be used,

looking at the blotter to review the activity of the tour about to end, etc. These tasks are all necessary and incidental to the performance of duty on a tour.

The Claimant takes issue with the Village's assertion that these preparatory tasks are solely for the benefit of the officers and that it does not ask its officers to be present until 3:00 p.m. She suggests that no police department can function this way and that it is unreasonable for the Village to take the position that duty time is only from the exact hour the tour begins to the exact hour the tour ends.

The Claimant also argues that the case law does not preclude her eligibility for benefits just because her injury occurred before 3:00 p.m. and because she was not performing one of the listed duties set forth in the police officer job description. She contends that the specific duties being performed are irrelevant to a General Municipal Law Section 207-c benefit determination. She also asserts that the Village's strict interpretation that the injury must occur during official duty hours is illogical because that would mean that if she was running late and got hurt changing in to her uniform after 3:00 p.m. that she would be eligible for benefits.

Furthermore, the Claimant contends that even though eligibility for benefits under Workers' Compensation Law is a separate determination, the analysis under that statute is relevant to this case. In one specific case involving that statute, the Appellate Division, Third Department, held that even though injuries sustained during commuting are generally not compensable, an exception to this rule applies when the objective of the trip is not only to commute but to engage in work beneficial to the employer. Callanan v. Town of Clarkstown, 191 A.D.2d 861 (3rd Dept., 1993). The Claimant avers that this case is applicable to the instant case because even though there may be a private purpose to

8

arriving early to work, there is no question that a function of employment (i.e., being available for a call and doing preparatory work for a tour) occurs as soon as the officer arrives as well.

Similarly, the Claimant argues that determinations under the Fair Labor Standards Act (FLSA) are relevant to this case as well. This is so because under the FLSA "hours worked" includes not only work that an employee is assigned to perform, but also work that an employee is "suffered or permitted to perform." Thus, since the Claimant's activities before the strike of 3:00 p.m. constitute hours worked under FLSA, they should constitute work time for Section 207-c purposes, even if she is not paid for this time.

The Claimant also contends that the Village's reliance on Balcerak v. County of Nassau, 274 A.D.2d 580 (2000) is misplaced. This is so because the officer in Balcerak was driving home from an assignment of guarding an inmate in a hospital when he was injured in a car accident. Officer Balcerak was denied benefits because he had left the premises where he was performing duties and was in his own vehicle on his way home. That case has no application here because Officer Balcerak was not in any temporal or spatial proximity to the performance of duties.

The Claimant notes that the Village has on at least one occasion in the past recognized that duty time may extend beyond the parameters of an officer's shift. Specifically, in 2000, Officer Waldron was granted 207-c benefits after he was injured after accidentally shooting himself in the left forefinger with his personal weapon while he was changing in the locker room after his shift had concluded. She argues that there is no factual distinction between Officer Waldron's incident and her incident as both injuries occurred in close proximity to a tour of duty, in the locker room of headquarters

9

and while changing out of uniform. Accordingly, the Village's decision in Waldron should be considered persuasive.

Finally, the Claimant also requests that the Arbitrator disregard certain arguments and "facts" raised by the Village which are irrelevant and inflammatory. She asserts that the Arbitrator should disregard any suggestion that she was being less than forthright when she stated on her Section 207-c application that the accident occurred at 1500 hours. According to the Claimant, the only basis to deny benefits is the time of the accident and the inflammatory remarks about her made by the Village's counsel at the hearing should be wholly disregarded by the Arbitrator.

## POSITION OF THE VILLAGE

Similar to the Claimant, the Village asserts that since Article 23, Section 1, of the Collective Bargaining Agreement (Joint Exhibit 1) quotes Section 207-c of the General Municipal, the Arbitrator's role should be limited to the meaning of the relevant portion of the statute and its application to the facts of this case. As such, it is up to the Arbitrator to decide whether the Claimant has demonstrated that she was "injured in the performance of h[er] duties" (GML Section 207-c).

The Village stresses that the current standard for determining whether an officer was injured in the performance of his or her duties was established by the Court of Appeals in Theroux, supra. It states that, pursuant to that standard, the Claimant must prove a direct causal relationship between job duties and the resulting injuries.

The Village points out that there do not appear to be any cases directly on point to this dispute that have been litigated in the courts after Theroux. Nonetheless, the Village

10

asserts that the courts have consistently upheld arbitration awards denying Section 207-c

benefits to employees who were injured while off-duty and not performing police duties,

even when the injuries occurred shortly before or shortly after the work shift. For

example, in <u>County of Westchester v. Sheehan</u>, 292 A.D.2d 486 (2d Dept. 2002), the

court found that a correction officer was not on duty when he was punched in the face by

a former inmate in the parking lot of a diner an hour before the officer's shift was to

begin. Likewise, in <u>Balcerak v. County of Nassau</u>, 274 A.D.2d 580 (2nd Dept 2000), the

court decided that a correction officer who was injured during a car accident that

occurred while he was driving home from his shift was not injured in the performance of

his duties. Finally, in <u>Wynne v. Town of Ramapo</u>, 286 A.D.2d 338 (2d Dept. 2001), the

court affirmed the denial of Section 207-c benefits to a police officer who, while on

vacation outside his department's jurisdiction, injured his hand while breaking a window

to free a child from a locked car because the officer was off-duty and "not acting as a

police officer."

     In the Village's view, these cases underscore the fact that Section 207-c is

intended to ensure that covered employees are fully compensated for injuries sustained

while performing their job duties. On the other hand, Section 207-c is not intended to

cover off-duty injuries arising from the universal activity of getting dressed, as in the

instant case.

     The Village stresses that the well accepted principle that Section 207-c shall be

liberally construed does not require the Arbitrator to check his common sense at the door

and determine that any injury incurred by a police officer soon before or soon after a tour

entitles the officer to Section 207-c benefits. Since the Claimant has the burden of

proving that the injury was sustained during the performance of her job duties, it is impossible for her to prevail in this case because she was injured: (i) while she was off-duty; and (ii) while she was not performing a police duty.

The Village points out that the Claimant was scheduled to begin her work at 3:00 p.m. on December 28, 2005 and not a minute earlier. Village of Briarcliff Manor Police Chief Norman Campion testified that neither the Claimant nor any other unit member is required by rule or regulation to arrive at the station prior to the actual start time of a shift. It was the Claimant's personal decision to arrive at the station early on December 28, 2005. There is no proof she was ordered to arrive early or that she was ordered to change in to her uniform at the station. The Claimant had the right to put her uniform on at her home. Instead, she chose to get into uniform at the station.

The Village asserts that the best evidence establishes that the Claimant was injured well before 3:00 p.m. The blotter entry made by the Police Department in response to the incident indicates that the incident was recorded at 14:47 or 2:47 p.m., 13 minutes prior to the start of the Claimant's shift. The blotter entry also indicates that the ambulance was dispatched at 14:47 and arrived at 14:53.

The Village further asserts that the Claimant is not entitled to 207-c benefits because she was injured while in the act of putting on a shoe. The Village contends that getting dressed for duty is not listed as one of the duties in the Westchester County civil service job description for police officers (Village Exhibit 4). Getting dressed cannot be considered a duty because every police officer in the Department has the right to choose where and when to get dressed for duty, including getting dressed at home. As a result, the Claimant was not injured in the performance of her duties.

12

The Village objects to the Claimant's argument that her injury is tantamount to being injured in the performance of her duties because police officers often arrive 15 to 20 minutes prior to a tour of duty. These actions are voluntary and do not modify the nature of a police officer's scope of duties. Moreover, this time does not constitute work time because police officers are not required to arrive prior to the beginning of their shifts and every police officer is permitted to get dressed and bring all necessary equipment home, with the exception of a portable radio.

The Village also contends that the Claimant's argument that police officers are eligible for Section 207-c if they are forced to perform a job is not relevant to this case. This is so because the Claimant was not being directed to perform a job duty at the time of her injury.

The Village also argues that its previous determination to grant Mr. Waldron Section 207-c benefits is not relevant to the instant dispute. It points out that it was a one time decision based on circumstances that are factually distinct from the Claimant's.

The Village emphasizes that the Claimant's argument that the decision to grant Section 207-c benefits to Mr. Waldron establishes some type of past practice should be summarily rejected. This is so because in order to establish a practice, one must show conduct between an employer and a union, not an employer and an individual. Since the collective bargaining agreement defines the parties to a Section 207-c dispute as being the Village and an individual police officer, there can be no practice that the Claimant can rely on as a matter of law.

Even if the Claimant could overcome that legal impediment, the Village's decision to grant Section 207-c status to one employee in no way establishes a past

practice. This is the case because a practice, to be enforceable, must be open, notorious, unequivocal and well established. Since the one time event of granting Mr. Waldron Section 207-c benefits does not in any way rise to the level of a binding past practice, the Village requests that the Arbitrator confirm Mr. Blau's determination that the Claimant is not eligible for Section 207-c status based upon the injury she suffered on December 28, 2005.

### OPINION

After reviewing the evidence in the record and the arguments of the parties, the undersigned concludes that the Claimant is not eligible for General Municipal Law Section 207-c status due to the injuries she suffered on December 28, 2005. I reach this conclusion because the Claimant's injury occurred while she was off-duty and because the voluntary choice to use the Police Department locker room to change into uniform prior to the start of a tour does not constitute the performance of a police duty.

In reaching these conclusions, the Arbitrator recognizes that both parties are correct in asserting that my role in this case is limited to interpreting the statute itself, the interpretations of the case law defining the statute's breadth of coverage and applying the law to the facts of this case. In doing so, the Arbitrator expressly acknowledges that his analysis is based on whether the Claimant proved "a direct causal relationship between job duties and resulting injury" (White v. County of Cortland, supra), and not about the "heightened risk" standard that was disavowed by the Court of Appeals in Theroux. Similarly, the Arbitrator recognizes that Section 207-c is a remedial statute that should be liberally construed in favor of coverage for injured officers.

14

Turning to the specific facts, there is no doubt that the Claimant was injured approximately 13 minutes before the start of her shift. Officer Farrington testified that he was assigned to the desk on December 28, 2005 and that he saw the Claimant arrive at the station at approximately 2:45 p.m. that day. He testified that the desk is approximately 20 feet from the women's locker room and that after the Claimant went in to the locker room he heard a loud bang in the locker room. He testified that he stood up, heard a second loud bang, whereupon the Claimant called his name to ask for assistance. Officer Farrington's testimony is consistent with the reports he completed regarding the incident. (Joint Exhibit 5).The blotter entry indicates that the incident occurred at 14:47 and that an ambulance was dispatched at 14:47 and arrived at 14:53. Officer Farrington's testimonial and documentary evidence is the best evidence.[1]

The Arbitrator disagrees with the Claimant's contention that changing into a police uniform constitutes duty time because the Village provides police officers with lockers and is well aware that they change into their uniforms at the station prior to the time their shifts begin. Police officers who change into their uniform at the station do so at their own discretion. There is no evidence that officers are expected or required to change into uniform at the station or that the Village has any problem with officers changing into uniform at home.

Similarly, the fact that the Village allows officers to relieve fellow officers early does not convert the act of changing into a uniform into duty time. The Claimant proved that there are many instances where police officers in the Village start engaging in police duties before the start of their shift. However, there is an important distinction to be

---

[1] In making this ruling, the Arbitrator wishes to assure the Claimant that he has disregarded arguments made by the Village that she considers to be inflammatory. The Arbitrator's ruling is based solely on whether, based upon the facts of this case, the Claimant is eligible for Section 207-c benefits.

drawn between officers engaging in police duties before the commencement of their shift and officers who are changing into a uniform prior to the start of their shift. The act of getting dressed is a preparatory act that may take place at home and may take place in the locker room. It is a voluntary choice made by the police officer, not a mandate from the Police Department. However, changing into uniform must take place prior to the commencement of an officer's shift and is much different than being ordered to go on patrol or directing traffic, acts that would legitimately convert the pre-shift time to duty time (Village Exhibit 4).

The Claimant also argues that changing into uniform constitutes duty time because the Village sometimes orders officers, immediately upon their arrival at the station but before their tour is to begin, to change quickly and start a police assignment. A situation where an officer is ordered to quickly change into uniform to start his or her shift early and is injured while quickly changing into uniform is vastly different than the facts of the instant case. In that example, since the Village is ordering the officer to get dressed quicker than he or she ordinarily would have to and where the officer is hastily going out on an assignment, the act of changing into uniform may very well constitute duty time, particularly in the context of the liberal construction that should be afforded to Section 207-c applicants.[2] In the instant case, however, the Claimant voluntarily decided to change into uniform prior to the start of her shift. She was not ordered to get dressed

---

[2] Since the Arbitrator considers the circumstances of the Claimant's injury to be vastly different than a situation where an employee is ordered before his or shift to start working, the Arbitrator, in spite of the Claimant's objection, finds it to be irrelevant whether Chief Campion would discipline an officer who refused to obey an order to perform police duties prior to the commencement of the officer's shift. If Chief Campion stated that he would not discipline an officer than the Claimant's argument fails and if he said he would discipline an officer it is not relevant because those are not the facts in the instant dispute.

quickly to start her tour of duty early. Under these circumstances, the Claimant cannot be deemed to have been performing a job duty at the time of her injury.

The Arbitrator also agrees with the Village that the act of getting dressed for work is not an official work duty of a police officer. Officers in the Department can choose to get dressed at home or at work. Also, getting dressed is a preparatory act and not a duty itself. The Arbitrator finds it relevant that the Westchester County Police Officer job description lists illustrative examples of work such as car and foot patrol, investigation, crowd control, escorting prisoners to court, etc. (Village Exhibit 4). The listed examples include all of the activities commonly associated with police work and do not include preparatory activities such as changing into uniform, upkeep of the uniform, driving to work, etc. Since the Court of Appeals stated in Theroux that "...the word duties in section 207-c encompasses the full range of an employee's job duties" it is clear to this Arbitrator that officers are entitled to Section 207-c coverage when they are injured or become sick as a result of the kinds of activities listed in Village Exhibit 4, not if they become injured as a result of non-police work, e.g., getting dressed to come on duty. Accordingly, Claimant was not injured in the performance of police duties.

The Arbitrator also does not give credence to the Claimant's argument that the Village's decision to grant Section 207-c benefits to Officer Waldron should be considered persuasive because it demonstrates that the Village does not construe duty time as being restricted to the official hours of the tour. The Claimant is correct in asserting that there appears to be almost no factual distinction between Mr. Waldron's incident and the Claimant's incident, although it is not absolutely clear to the Arbitrator why Mr. Waldron was handling his off-duty gun after his shift. Nonetheless, the Village's

treatment of Mr. Waldron cannot be treated as persuasive as doing so would be in complete disregard of the longstanding requirements to establish a past practice.

> When it is asserted that a past practice constitutes an implied term of a contract, strong proof of its existence ordinarily will be required. Indeed, many arbitrators have recognized that, "In the absence of a written agreement, 'past practice' to be binding on both Parties, must be (1) unequivocal; (2) clearly enunciated and acted upon; (3) readily ascertainable over a reasonable period of time as a fixed, and established practice accepted by both Parties." Elkouri & Elkouri, How Arbitration Works, pgs. 607-608, (6th ed. 2003).

Accordingly, the Village's one time decision to grant Section 207-c status to an individual employee does not constitute a past practice and is not binding on the Village.

Given that the Claimant has failed to prove that she was injured during police duty time and also failed to prove that the act of getting dressed into her police uniform constitutes a police duty, I find that she is not eligible for General Municipal Law Section 207-c status as a result of the injuries she sustained on December 28, 2005. Accordingly, based on the foregoing, I find and make the following:

18

## AWARD

The Village's position is sustained. The Claimant is not eligible for General

Municipal Law Section 207-c status due to the injuries she suffered on December 28,

2005.


Dated: July 31, 2006
     Cold Spring, New York

Jay M. Siegel, Esq.
Arbitrator


STATE OF NEW YORK)
COUNTY OF PUTNAM)

    I, Jay M. Siegel, do hereby affirm upon my oath as Arbitrator that I am the
individual described herein and who executed this Instrument which is my Opinion and
Award.


Dated: July 31, 2006

Jay M. Siegel, Esq.
Arbitrator

