UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
LINDA DIMEGLIO,                         :
                                        :
           Plaintiff,                   :     07 Civ. 3324 (LAP)
                                        :
    -against-                           :     OPINION AND ORDER
                                        :
VILLAGE OF BRIARCLIFF MANOR,            :
                                        :
           Defendant.                   :
----------------------------------------X

**LORETTA A. PRESKA, Chief United States District Judge:**

Plaintiff Linda DiMeglio commenced this action pursuant to 42 U.S.C. § 1983 against the Village of Briarcliff Manor (the "Village"), alleging that her employer, the Briarcliff Manor Police Department, discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

Defendant has filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, arguing that Plaintiff fails to establish a viable claim for gender discrimination in violation of Title VII. The parties' briefs and Rule 56.1 Statements reveal that there exists no dispute over the material facts underlying this action.[1] For the following reasons, the Court grants the Defendant's motion for summary judgment.

---

[1] Defendant submitted a reply to Plaintiff's counter statement of material facts that disputes the following facts: (1) the Village of Briarcliff Manor erred when it granted Police Officer Dennis Waldron 207-c benefits; (2) the Village of Briarcliff Manor had the opportunity to recover the salary portion of Police Officer Waldron's 207-c benefits; (3) the Village of Briarcliff Manor did offset monies otherwise due Police Officer Waldron for certain 207-c benefits it determined were given in error; and (4) Village Administrator Blau was aware of the granting of 207-c benefits to Police Officer Waldron at the time he denied the benefits of Police Officer DiMeglio. *See* Pl. Counter Statement of Material Facts; Defendant's Reply to Counter Statement, ¶¶ 37, 39-41. These facts do not affect the outcome under governing law and are deemed immaterial.

I.  **FACTS**

Plaintiff commenced her employment as a police officer with the Village in May 2001. At the start of Plaintiff's employment, Ronald Trainham was the Chief of Police, and Charlie Bradley was the Village Manager. In October 2001, Michael Blau was appointed the Village Manager. In March 2004, Norman Campion was appointed the Chief of Police. *See* Deft. R. 56.1 St. ¶¶ 1-5. Under General Municipal Law § 207-c ("Section 207-c"), it is within the Village Manager's authority to approve or deny applications for disability leave. *See* Rivera Dec. Ex. E (Blau Tr. at 10:7-9).

On or about November 19, 2000, prior to the start of Plaintiff's employment, former police officer Dennis Waldron was injured when his off-duty revolver accidentally went off in the locker room at the end of his tour of duty. Waldron went on disability leave under Section 207-c. *See* Deft. R. 56.1 St. ¶¶ 9-10. When Blau became Village Manager, he affirmatively sought to have Waldron return to work and have his 207-c benefits terminated. *See* Ex. E at 20:17-20. An arbitration was held and by an opinion and award dated July 30, 2002, Waldron was directed to return to work and his 207-c benefits were terminated. *See* Rivera Dec. Ex. G (Arbitrator's Opinion and Award).

On December 28, 2005, the date of Plaintiff's accident, Plaintiff was assigned to work the 3:00 p.m. to 11:00 p.m. tour. The Village expects its officers to be ready for duty the minute their tour begins, in this case, 3:00 p.m. There is no written requirement that an officer arrive prior to her scheduled tour, and an officer is not paid for arriving earlier than the official start time of her tour. *See* Deft. R. 56.1 St. ¶¶ 13, 14, 16-18, 20.

On December 28, 2005, the Plaintiff arrived to work approximately 15 to 20 minutes prior to the start of her tour. *See* Deft. R. 56.1 St. ¶ 19. Upon her arrival to work, she went to the

locker room to change into her uniform. *See* Deft. R. 56.1 St. ¶ 21. While changing into her uniform, the Plaintiff lost her balance and fell in the locker room. *See* Deft. R. 56.1 St. ¶ 22. The accident occurred before 3:00 p.m. *See* Deft. R. 56.1 St. ¶ 23. Plaintiff then placed a call for medical assistance; the time on the police blotter, which notes when the call was made to the police station, indicates the call was made at 2:47 p.m. *See* Deft. R. 56.1 St. ¶¶ 24-26.

Shortly after her accident, the Plaintiff submitted an application for disability leave under Section 207-c. *See* Deft. R. 56.1 St. ¶ 28. Prior to rendering a decision on the Plaintiff's 207-c application, Blau spoke with Chief Campion and Police Officer Thomas Ferrington, a witness identified by the Plaintiff, to investigate the matter further. *See* Deft. R. 56.1 St. ¶ 30; Ex. E at 10:18-20. Blau decided to deny the Plaintiff's application for 207-c benefits because the Plaintiff's accident occurred prior to the start of her tour. *See* Deft. R. 56.1 St. ¶ 32; Ex. E at 12:13-21 and 28:8-11.

Since the start of Plaintiff's employment in 2001, other officers have applied for 207-c benefits. *See* Deft. R. 56.1 St. ¶ 33. All were injured during the course of their tours. *Id.* One of the people who applied for 207-c benefits was Sergeant Lisa Gallagher, a female. *See* Deft. R. 56.1 St. ¶ 34. Sergeant Gallagher was injured during the course of her tour. *See* Deft. R. 56.1 St. ¶ 35. While the Plaintiff has been employed, there have not been any other applications or granting of 207-c benefits to persons who were injured outside their tour of duty. *See* Ex. E at 27:24-25 and 28:1-4. Plaintiff maintains that she was in her "official duty" and "not outside her 'tour of duty'" when her accident occurred. Pl. R. 56.1 St. ¶ 36.

3

## II. STANDARD FOR GRANTING SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56(c), summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A fact is "material" when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The burden of demonstrating that no issue of material fact exists lies with the party seeking summary judgment. *See, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A court considering a motion for summary judgment must construe the evidence in the light most favorable to the non-moving party, drawing all inferences in that party's favor. *See Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). Rather than asking if "the evidence unmistakably favors one side or the other," a court must ask whether "a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. If so, the court may not grant a defendant's motion for summary judgment. Assessing the credibility of witnesses and choosing between conflicting versions of events are roles for the fact finder, not for the court on summary judgment. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).

The non-moving party must present sufficient evidence such that a jury could reasonably find in its favor – "the mere existence of a scintilla of evidence in support of the plaintiff's position" is not enough. *Anderson*, 477 U.S. at 252. "The non-moving party may not rely on mere conclusory allegations or speculation, but instead must offer some hard evidence showing

4

that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

### III. DISCUSSION

#### A. Claims for Employment Discrimination under Title VII

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(a)(1). Allegations of unlawful employment discrimination and/or retaliation are considered under the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The plaintiff bears the minimal initial burden of establishing a prima facie case of discrimination through direct or circumstantial evidence. *See Windham v. Time Warner, Inc.*, 275 F.3d 179, 187 (2d Cir. 2001). In order to establish a prima facie case of gender discrimination under Title VII, the plaintiff must show that: (1) she belongs to a protected class; (2) she was qualified for the position or benefit denied; (3) she was subjected to an adverse employment decision; and (4) this adverse decision occurred under circumstances giving rise to an inference of discrimination. *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004). A plaintiff may raise such an inference of discrimination by showing that the employer subjected her to disparate treatment, that is, treated her less favorably than a similarly situated employee outside her protected group. *See Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).

A plaintiff who is able to make out a prima facie case creates a presumption of discrimination and shifts the burden of production to the defendant. The defendant must meet this burden by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *Farias v. Instructional Sys.*, 259 F.3d 91, 98 (2d Cir. 2001).

If the defendant can present a non-discriminatory explanation, the presumption of discrimination drops out of the analysis and the burden of proof shifts back to the plaintiff. *Id.* The plaintiff must then prove "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). To defeat summary judgment, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Feingold*, 366 F.3d at 152.

### B. Gender discrimination / disparate treatment

The Plaintiff argues that she suffered discrimination on the basis of her gender when her application for disability benefits under General Municipal Law § 207-c was denied. Under Section 207-c "any member of a police force of any ... village ... who is *injured in the performance of [her] duties* ... shall be paid by the municipality by which [she] is employed the full amount of [her] regular salary or wages until [her] disability arising therefrom has ceased, and, in addition such municipality shall be liable for all medical treatment and hospital care necessitated by reason of such injury." N.Y. GEN. MUN. LAW ("GML") § 207-c (emphasis added). GML § 207-c vests municipalities with discretion to determine employee eligibility for benefits in the first instance. *De Poalo v. County of Schenectady*, 200 A.D. 2d 277, 280 (3d Dep't 1994).

The Village argues that Plaintiff has not met three elements of her prima facie burden. For purposes of this motion, the Village concedes that the Plaintiff is a member of a protected class. *See* Deft. Mem. of Law in Support at 3. However, the Village argues that Plaintiff has failed to demonstrate that: (1) she was qualified for benefits under GML § 207-c; (2) she suffered

an adverse employment action; and (3) the adverse action occurred under circumstances giving rise to an inference of discrimination.

While Plaintiff wrote on her application for benefits that the accident occurred at 3:00 p.m., the start of her official tour of duty, she admits that her accident actually occurred before 3:00 p.m. *See* Pl. R. 56.1 St. ¶¶ 22-23. After the incident, Plaintiff called for medical assistance and, according to the police blotter that notes when calls are made in the police station, that call was made at 2:47 p.m.[2] *See* Pl. R. 56.1 St. ¶¶ 23-26. The fact that the accident occurred before the start of Plaintiff's official start of duty, therefore, is not in dispute. Plaintiff, however, contends that she was in her official duty and "not outside her 'tour of duty'" when the accident occurred. *See* Pl. R. 56.1 St. ¶ 36. Despite this contention, she offers no legal authority or factual evidence to support the proposition that changing into one's uniform prior to the start of a tour of duty constitutes an "official duty" within the scope of Section 207-c. Therefore, Plaintiff has not demonstrated that she was qualified or entitled to any benefit. Because Plaintiff has failed to satisfy this prong of her prima facie burden, summary judgment is warranted on this basis alone.

Nevertheless, even if Plaintiff was denied disability benefits to which she was entitled under the law, constituting an adverse employment action, *see Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008), she has not demonstrated the denial of benefits occurred under circumstances giving rise to an inference of discrimination. Plaintiff claims that "during the course of her employment with the Village, she learned about other officers in her department who were out on leave." Pl. Mem. of Law in Opp'n at 8. However, she mentions only one officer, Sergeant Dennis Waldron. Plaintiff relies only on the fact that Waldron received Section

---

[2] Plaintiff claims in her memorandum that a paramedic was called at 3:47 p.m. *See* Pl. Mem. of Law in Opp'n at 7. However, she admits her accident occurred prior to the start of her tour at 3:00 p.m. *See* Pl. R. 56.1 St. ¶ 23; *see also* Pl. Mem. of Law in Opp'n at 6-7.

7

207-c benefits for an injury which occurred off duty, while she did not. When asked at her deposition how she felt she was discriminated against, Plaintiff answered, "Just being a female in the department and after learning that Dennis Waldron received his benefits from an off-duty injury [and] I did not." Rivera Dec. Ex. C (Pl. Tr. 64:16 – 65:3).

When asked who the Plaintiff felt was discriminating against her, she identified the Village Manager, Michael Blau. *Id* at 65:18-22. However, Plaintiff also testified that at the time Waldron applied for his 207-c benefits, Blau was not the Village Manager. 65:23-66:2. When asked why she felt that Blau was discriminating against her, she responded, "I don't have an exact reason. I don't know." *Id* at 66:5-6.

Blau testified that when he took over the position of Village Manager, he found that the Village's application process and approval for Section 207-c benefits was not being conducted in accordance with the collective bargaining agreement and that one of his responsibilities was to properly administer the 207-c program and make sure to abide by the provisions in the union contract. *See* Ex. E at 16:15-25. He testified that his assessment of Waldron's case was that "there was no reason why he needed to be out on 207-c" and that he ordered him back to work. *Id* at 18:2-5. Blau also testified that he had written to Waldron stating that the Village had granted him certain benefits that he was not entitled to and the Village was going to recoup those costs. *Id* at 18:22-25.

Additionally, Blau testified that during the course of his tenure as Village Manager, he did not receive any other applications for 207-c benefits that involved a police officer or a member of the police force where the injury occurred either before the tour of duty or after the tour of duty. *See* Ex. E at 27:24-25 and 28:1-4. Other than Waldron, the Plaintiff does not name any other male officers who were injured outside of their tour of duty and were granted benefits

8

under Section 207-c. The Plaintiff also does not identify any other female officers that were denied Section 207-c benefits, and Plaintiff admits that another female officer, Sergeant Lisa Gallagher, was granted Section 207-c benefits during the course of Plaintiff's employment. *See* Pl. R. 56.1 St. ¶¶ 34-35.

Therefore, Plaintiff has failed to show that she was entitled to any benefits or that she was subjected to disparate treatment. As such, the Plaintiff's admissible evidence does not reflect circumstances sufficient to permit a rational finder of fact to infer that the Defendant's decision to deny Section 207-c benefits in her case "was more likely than not based in whole or in part on discrimination." *Feingold*, 366 F.3d at 152.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff has failed to make a prima facie showing of gender discrimination as to the denial of her application for Section 207-c benefits. As this Court finds that Plaintiff did not establish a prima facie case of discrimination, it need not determine if Defendant offered a valid, nondiscriminatory reason for its actions. Accordingly, the Defendant's motion for summary judgment [dkt. no. 28] is GRANTED.

The Clerk of the Court is hereby directed to close this case and to mark any pending motions denied as moot.

SO ORDERED:

Dated: *September 17*, 2010

*Loretta A. Preska*
Loretta A. Preska
Chief United States District Judge